UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| KAILA HECTOR, *on behalf of herself an all others similarly situated,*         Plaintiff, <br><br> v. <br><br> TRANS UNION RENTAL SCREENING SOLUTIONS, INC., <br>         Defendant. | Civil Action No: 3:19-cv-790 |

## CLASS ACTION COMPLAINT

Plaintiff KAILA HECTOR, on behalf of herself and all others similarly situated, brings the following Class Action Complaint and states as follows:

### PRELIMINARY STATEMENT

1. This is a consumer class action for damages, costs and attorneys' fees brought against Defendant TRANSUNION RENTAL SCREENING SOLUTIONS, INC. ("Defendant" or "TURSS"), based upon the Defendant's widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

3. Despite the public availability of court records that conclusively demonstrate that eviction cases have been dismissed, withdrawn, vacated, or which resulted in judgments for tenants, Defendant routinely fails to obtain up-to-date information pertaining to the disposition of those cases and publishes harmful, inaccurate "tenant screening" reports about consumers like Plaintiff to potential landlords. Additionally, Defendant fails to report accurate information by reporting a single eviction as multiple evictions, and otherwise misreporting information related to eviction cases.

## JURISDICTION and VENUE

4. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

5. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Important witnesses and records necessary for the prosecution of this case are based in Richmond, Virginia, including the Executive Secretary as well as employees of the Office of the Executive Secretary.

## PARTIES

6. Plaintiff Kaila Hector ("Ms. Hector") is an adult individual who previously resided in Hampton, Virginia and a "consumer" as defined by FCRA section 1681a(c).

7. Defendant TransUnion Rental Screening Solutions, Inc. ("TURSS") is a "consumer reporting agency" ("CRA") as defined by FCRA section 1681a(f) and regularly does business in this District. Defendant is a Delaware corporation doing business throughout the United States, including in the State of Virginia, and has a principal place of business located at 5889 South Greenwood Plaza Boulevard, Suite 201, Greenwood Village, Colorado, 80111.

## **FACTUAL ALLEGATIONS**

*As to Defendant's Reporting of Eviction Litigation Information*

8. For many years, TURSS has purchased information pertaining to residential eviction litigation ("eviction information") from one or more private vendors instead of retrieving the actual underlying court records themselves—or even more manageable digital representations—for the purpose of creating and selling consumer reports to third-party landlords and rental property managers.

9. The eviction information TURSS purchases is merely a summary prepared by its vendors that does not include all the information or the most up-to-date information available at the courthouses or government offices where the records themselves are housed in conjunction with the day-to-day functioning of those entities.

10. Purchasing distilled, incomplete public records information was the impetus for regulatory investigations of TransUnion, Experian Information Solutions, Inc., and Equifax Information Services, LLC (the "national CRAs"), and dozens of FCRA class action lawsuits throughout the United States, including in this District.[1]

11. For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that the CRAs did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such

---

[1] *See, e.g., Soutter v. Equifax Info. Serv's, LLC*, Case No. 3:10-cv-107 (E.D. Va.); *Clark v. Experian Info. Sol's., Inc.*, Case No. 3:16-cv-32 (E.D. Va.); *Anderson v. TransUnion, LLC*, Case No. 3:16-cv-558 (E.D. Va.); *Clark v. TransUnion, LLC*, Case No. 3:15-cv-00391 (E.D. Va.); *Thomas v. Equifax Info. Serv's, LLC*, No. 3:18-cv-684 (E.D. Va.).

weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[2]

12. Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[3]

13. Other regulators, including the New York Attorney General, initiated investigations of the national CRAs, in part due to similar problems with the accuracy and currency of public record information in credit reports.

14. The national CRAs ultimately entered into an agreement[4] with the New York Attorney General that they took to calling the "National Consumer Assistance Plan" ("NCAP").

15. As of July 1, 2017, pursuant to the requirements of the settlement and the NCAP, the national CRAs ceased including in credit reports civil judgment information that did not meet

---

[2] CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed July 9, 2018).

[3] *Id*. at 2.1.2.

[4] Settlement Agreement, *In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of the State of New York, of Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion, LLC,* http://www.ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf (last viewed July 9, 2018).

certain minimum standards. In practice, this meant that civil judgments disappeared entirely from consumer reports prepared by the national CRAs.[5]

16. At all times relevant to these allegations, TURSS was aware of the CFPB's and state attorneys' general investigations into the national CRA's public records practices, the NCAP, the various public records class actions pending throughout the United States, and its own obligations under the FCRA.

17. TURSS knows that its public records vendors make mistakes in the condensed, summary eviction information that it purchases for credit reporting purposes.

18. TURSS knows that the condensed, summary eviction information it purchases for credit reporting purposes routinely does not include the most up-to-date status of the actual cases.

19. Nevertheless, fully aware of the problems associated with the incomplete and inaccurate information purchased from vendors of such information, TURSS continues to report eviction information to potential landlords via its SmartMove tenant screening product.

20. TURRS markets its SmartMove product to landlords by noting that it can provide "Credit reports, criminal background checks, income estimate, and eviction records." It purports to offer "Superior accuracy using advanced matching technology on all tenant screening reports."[6]

---

[5] *See* CFPB, *Quarterly Consumer Credit Trends Report*, 2-3 (February 2018) https://www.consumerfinance.gov/documents/6270/cfpb_consumer-credit-trends_public-records_022018.pdf (last viewed July 9, 2018).

[6] TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., *Tenant Screening | TransUnion SmartMove | Tenant Background Check*, https://www.mysmartmove.com (last visited July 9, 2018).

21. On its website, TURSS asks potential landlords if there is ". . . anything more painful than evicting a tenant?"[7] and promises that the "Eviction Report" portion of the SmartMove product will help them "predict future behavior by knowing your tenant's past history."[8]

22. According to TURSS, the Eviction Report "include court records on every file" and information on the Eviction Report comes "from a variety of sources including public court records, and are enhanced with data reported directly to TransUnion."[9]

23. The TURSS Eviction Reports includes: "Tenant judgment for possession and money[;] Unlawful detainers[;] Tenant judgments for rent[;] Failure to pay rent[; and] Writs and warrants of eviction[.]"[10]

24. By its own admissions, TURSS is engaged in the business of assembling, evaluating, and disbursing eviction information concerning consumers for the purpose of furnishing consumer reports to landlords and rental property managers.

25. The data and reports TURSS sells are used and expected to be used for multiple purposes governed by 15 U.S.C. § 1681b and the eviction information included in each report bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of each respective consumer.

26. Thus, the SmartMove reports that TURSS sells about thousands of consumers each year meet the definition of "consumer report" in FCRA section 1681a(d).

---

[7] TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., *Eviction Check | Tenant Eviction Search | TransUnion SmartMove*, https://www.mysmartmove.com/SmartMove/eviction-check.page (last visited July 9, 2018).

[8] *Id*.

[9] *Id*.

[10] *Id*.

27. TURSS is regulated by the FCRA and admits as much on its website.[11]

28. TURSS routinely fails to report accurate information about eviction litigation, including the most up-to-date status of those cases because it fails to follow reasonable procedures to assure the maximum possible accuracy of the eviction information it sells about consumers. *See* 15 U.S.C. § 1681e(b).

29. TURSS' practices and procedures regarding the reporting of eviction information, specifically its failure to report the most up-to-date status of eviction cases cause widespread harm to consumers.

*Plaintiff's Experience*

30. On or about November 2017, Plaintiff Hector identified a house which she wanted lease.

31. Plaintiff Hector contacted the owner, who indicated the house rented for approximately $1,300.00 per month.

32. Plaintiff Hector completed an application and paid an application fee of $100.00. Plaintiff Hector also paid $50.00 in additional fees.

33. As a part of her application, the owner of the house Plaintiff Hector sought to rent obtained a SmartMove report about her. Plaintiff was required to pay for the cost of this report, approximately $50.00. TURSS created and sold the owner a SmartMove report about Plaintiff Hector that same day for a fee.

34. Upon meeting with the owner of the house, Plaintiff Hector told the owner about her previous eviction in Virginia as well as the fact that she had paid any obligation associated

---

[11] *Id.* (noting that TURSS has "One of the largest evictions databases subject to the FCRA with 25+ million eviction records, covering all 50 states plus Washington D.C.").

with the eviction. The owner told Plaintiff Hector she wanted Plaintiff Hector to be her tenant and would be willing to give her the keys early. The owner advised Plaintiff Hector that the house was hers to rent, once the TURSS report came back consistent with their conversation.

35. TURSS provides tenant screening reports, which are consumer reports also known as background checks, on prospective tenants used to determine whether a prospective tenant was eligible to rent an apartment unit.

36. The TURSS report was inaccurate and incorrectly double reported the same judgment with Plaintiff Hector under the heading "Eviction records."

37. The two TURSS "eviction records" stated, in relevant part, as follows:

| | |
|---|---|
| **Name** | HECTOR, KAILA S |
| **Address**[12] | XXXX Goldsboro Dr #2 |
| | Hampton VA 23605 |
| **County** | Hampton District Court |
| **Record ID** | MP45064565 |
| **File Number** | 650GV1001921000 |
| **Action Date** | 1/11/2011 |
| **Case Type** | Civil Judgment |
| **Plaintiff** | Cambridge Apartments LC |
| **Judgment Amount** | $879 |

| | |
|---|---|
| **Name** | HECTOR, KAILA S |
| **Address** | XXXX Goldsboro Dr #2 |
| | Hampton VA 23605 |
| **County** | Hampton District Court |
| **Record ID** | MP93521309 |
| **File Number** | 650GV1001921000 |

---

[12] The full address was included in Plaintiff Hector's TURSS report, but has been redacted for purposes of this publicly-filed Complaint.

8

| | |
|---|---|
| **Action Date** | 6/6/2013 |
| **Case Type** | Civil Judgment |
| **Plaintiff** | Cambridge Apartments LC |
| **Judgment Amount** | $879 |

38. This information was inaccurate because the information was reported as if Plaintiff Hector had two evictions that were unpaid two years apart in the amount of $879 each.

39. In fact, the two reported evictions were actually one case.

40. Further, publicly available records clearly show that only one case was initiated against Plaintiff Hector. The case was initiated on December 16, 2010. A default judgment was entered on January 11, 2011, and the date satisfaction filed was June 6, 2013. No second case was ever brought against Plaintiff Hector.

41. As a result of TURSS reporting two eviction judgments that were unpaid, and contrary to what Plaintiff Hector represented to the owner, the owner denied Plaintiff Hector's application. The owner told Plaintiff Hector that the existence of two judgments, as opposed to only one, was the reason she was denied.

42. As a result of the inaccurate information, Plaintiff Hector was required to rent a different less desirable apartment located in the High Ridge Landing Complex located in Boynton Beach, Florida at a monthly rate of $1,700.00, approximately $300 higher per month than the house she wanted to lease. She lost the application fees paid to the owner, and she had to live with her mother for approximately one month while she sought new housing.

*Facts Regarding Defendant's Willfulness*

43. If Defendant had reasonable procedures to ensure maximum possible accuracy, it would not have reported multiple evictions for Plaintiff Hector, which were inconsistent with publicly available records.

44. Defendant did not consult the readily available online court records before reporting the eviction records. If it had, it would have avoided its error.

45. Instead, Defendant chose to rely on stale data, which was not up-to-date. Defendant likely did this because it was cheaper for Defendant to purchase in bulk and static form than to re-check the court data at or near the time of the report.

46. In addition to the conduct set forth above, Defendant's willful conduct is further reflected by, *inter alia*, the following:

    a. The FCRA was enacted in 1970; Defendant has had 49 years to become compliant;

    b. Defendant and its parent company have been repeatedly sued for misreporting public record information.[13]

    c. Defendant is a corporation with access to legal advice through its own general counsel's office and outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

    d. Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

---

[13] *Anderson v. Trans Union LLC*, No. 3:16-cv-588 (E.D. Va.); *Clark v Trans Union LLC*, No. 3:15-cv-391 (E.D. Va.); *Walsh v. Trans Union, LLC*, No. 6:18-cv-00166, (M.D. Fla.).

    e. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

    f. If Defendant had consulted the publicly available online court records, it would have easily discovered that the information it was reporting about Plaintiff was inaccurate. However, Defendant failed to do so;

    g. Defendant's violations of the FCRA were repeated and systematic.

47. At all times relevant hereto, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

## CLASS ACTION ALLEGATIONS

48. Plaintiff Hector brings this action on behalf of the Failure to Update Class for Defendant's violations of FCRA section 1681e(b), defined as:

> Within the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendant that contained information pertaining to an unlawful detainer action filed in the Commonwealth of Virginia, but which failed to state that the judgment had been vacated, satisfied, or otherwise withdrawn.

49. Plaintiff Hector also brings this action on behalf of the Multiple Record Class for Defendant's violations of the FCRA section 1681e(b), defined as:

> Within the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendant that contained information pertaining to an unlawful detainer

or other eviction action where two distinct Record IDs are reported with the same File Number.

50. The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the members of the Classes number in the thousands.

51. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether the Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' files with respect to two types of situations: eviction cases that had a judgment that had been vacated, satisfied or otherwise withdrawn at least 30 days prior to the date Defendant prepared the report and/or reported one case as multiple cases.

52. Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

53. Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has secured counsel very experienced in handling consumer class actions. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this claim.

54. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of

other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

55. Whether Defendant violated the FCRA can be determined by examination of Defendant's policies and conduct and a ministerial inspection of Defendant's business records and publicly available eviction litigation records.

56. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendant's records.

## CLAIMS for RELIEF

### COUNT I – VIOLATION of FCRA § 1681e(b)

57. Plaintiff incorporate the foregoing paragraphs as though set forth at length herein.

58. Pursuant to sections 1681n and 1681o of the FCRA, TURSS is liable to Plaintiff and the members of the Classes for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of consumer reports it prepared and sold about Plaintiff and other members of the Classes, in violation of 15 U.S.C. § 1681e(b). Specifically, TURSS failed to follow reasonable procedures to assure maximum accuracy of consumers reports when it prepared reports containing information pertaining to either: 1) eviction judgments that had been vacated, satisfied or otherwise withdrawn at least 30 days prior to the date Defendant prepared the report or 2) eviction records that were double reported.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter an order granting the following relief:

A. Certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Classes;

B. Entering judgment for Plaintiff and the members of the Classes against Defendant for statutory, actual, and punitive damages for violation of 15 U.S.C. §1681e(b) pursuant to 15 U.S.C. §§ 1681n and 1681o;

C. Awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

D. Granting such other and further relief as may be just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

**KAILA HECTOR,** *on behalf of herself and all others similarly situated.*

By: *Leonard A. Bennett*
Leonard A. Bennett, VSB No. 37523
Elizabeth W. Hanes, VSB No. 75574
Craig Marchiando, VSB No. 89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com
Email: elizabeth@clalegal.com
Email: craig@clalegal.com

*Attorneys for Plaintiff and the Classes*